735 P.2d 856

**Burt A. PUGH, Jr. and Sumie T. Pugh, husband and wife, Plaintiffs/Appellees,**

v.

**Hildegarde COOK, a married woman; Stewart Title & Trust Company of Tucson, an Arizona corporation, as Trustee under Trust No. 1460, Defendants/Appellants.**

**No. 2 CA–CV 5978.**

Court of Appeals of Arizona, Division 2, Department A.

April 2, 1987.

Little, Fisher, Siegel & Bellovin, P.C. by Robert Douglas Little, Tucson, for plaintiffs/appellees.

Feldman, Mendelsohn, Mance & Oseran, P.C. by James M. Woodrow, Tucson, for defendants/appellants.

HATHAWAY, Chief Judge.

This appeal is taken from the trial court's rejection of appellants' claim of two easements across appellees' land and the court's ruling that a "Well Agreement" between the parties was dissolved.

Stewart Title & Trust Company, as trustee, and Hildegarde Cook, as beneficiary, owned a 163–acre parcel of land in the Empire Mountains south of Tucson. In 1976, 22.8 acres were sold to appellees. The deed conveying the land provided that the interest of appellees was subject to "[e]stablished and/or existing roads, roadways and highways." At the time of the conveyance, there were four "roads" or "trails" crossing appellees' property. Subsequently, the parties entered into a "Well Agreement" which provided that Cook, the Pughs and other landowners who purchased parts of the Cook parcel were licensees with the right to use water from wells maintained under the agreement.

In 1980, appellants filed an affidavit with the Pima County Recorder containing the legal description of the four easements. Appellees filed suit to quiet title to their property. After trial to the court, sitting without a jury, judgment was rendered that only roads 1 and 2 constituted easements over appellees' property and that the easements claimed by appellants as numbers 3 and 4 were not valid. The court also declared the "Well Agreement" dissolved.

Appellants argue that the express language of the deed created easements over all four roads. In the alternative, they argue that if the deed did not create express easements, they acquired implied easements over the four roads. Regarding the "Well Agreement," they argue that the trial court did not have jurisdiction to resolve the matter, that the court erred in finding the agreement unconscionable, and that there were no other grounds to support the court's judgment. We affirm.

## EASEMENTS

An appellate court will not weigh the evidence on a disputed question of fact. We will only examine the record to determine whether substantial evidence exists to support the decision of the trial court. *Whittemore v. Amator*, 148 Ariz. 173, 713 P.2d 1231 (1986). Nor do we judge the credibility of the witnesses. That also is a matter within the province of the trier of fact. *Brevick v. Brevick*, 129 Ariz. 51, 628 P.2d 599 (App.1981). Here, the disputed fact was whether the four claimed easements were roads in 1976 when the land was conveyed to appellees. The trial court weighed the evidence, evaluated the credibility of the witnesses and determined that claimed easements numbers 3 and 4 were not roads at that time. We have reviewed the record and find that there is substantial evidence to support such a determination. The decision of the trial court was not clearly erroneous.

Appellants next argue that they acquired an interest in appellees' land by means of implied easements. Appellees, citing *Hydro-Dynamics, Inc. v. Pope*, 146 Ariz. 586, 708 P.2d 70 (1985), argue that the issue of implied easements was not raised in the trial court, and therefore cannot be raised on appeal. Appellants counter that

they did argue the necessity of easement number 4 as the only existing access to their land in their Motion for Reconsideration/New Trial. We agree with appellants and believe the issue is properly before us. We do not, however, believe that appellants have shown that an implied easement was created.

The essential elements of an implied easement were set forth in *Koestel v. Buena Vista Public Service Corporation,* 138 Ariz. 578, 676 P.2d 6 (App.1984):

(1) The existence of a single tract of land so arranged that one portion of it derives a benefit from the other, the division thereof by a single owner into two or more parcels, and the separation of title; (2) before separation occurs, the use must have been long, continued, obvious or manifest, to a degree which shows permanency; and (3) the use of the claimed easement must be essential to the beneficial enjoyment of the parcel to be benefitted.

138 Ariz. at 580, 676 P.2d at 8 quoting *Porter v. Griffith,* 25 Ariz.App. 300, 302, 543 P.2d 138, 140 (1975).

■ We do not believe that appellants have satisfied the third requirement. At the time of the conveyance to the Pughs, easement number 4 was not essential to the beneficial enjoyment of the property now owned by Cook. At that time, Cook had access to her land over easement number 1. Subsequent to the conveyance to the Pughs, Cook conveyed part of her remaining acreage to others which resulted in easement number 4 becoming necessary for access, according to appellants. Arizona courts have not addressed the question of when the necessity of an easement must be shown in order to establish an implied easement. The issue has been dealt with in other jurisdictions where the courts have held that the necessity must exist at the time of the conveyance. *Evanik v. Janus,* 120 Ill.App.3d 475, 76 Ill.Dec. 308, 458 N.E.2d 962 (1983); *State v. Cronin,* 179 Mont. 481, 587 P.2d 395 (1978); *Blackwell v. Mayes County Utility Services Authority,* 571 P.2d 435 (Okla.1977); *Koonce v. J.E. Brite Estate,* 663 S.W.2d 451 (Tex.

1984). See 25 Am.Jur.2d, Easements and Licenses, §§ 33, 36 (1966). We believe this is the correct result. The necessity of the easement did not exist at the time of the conveyance to the Pughs; therefore, no implied easement can be imposed on their land.

## WELL AGREEMENT

■ Appellants argue for the first time on appeal that the trial court lacked subject matter jurisdiction over the agreement. They claim that a pending action in Maricopa County Superior Court to adjudicate all water rights in the Upper Santa Cruz River forecloses consideration of those rights by any other court. In *Gabel v. Tatum,* 146 Ariz. 527, 707 P.2d 325 (App.1985), we held that a pending action to adjudicate water rights under A.R.S. § 45-252 precluded another court from determination of those rights.

However, we do not believe that the agreement here is an adjudication of water rights subject to the Maricopa County action. Even if the water from the well in question is appropriable and therefore subject to the general adjudication, the Maricopa County suit would not resolve the issue of the validity of the agreement in question. As between the parties, the issue before the trial court was solely what force and effect to give to the agreement. The issue is not a water rights question, but a contract question, and the trial court had jurisdiction to determine whether the agreement should continue in effect.

■ In its judgment, the trial court found that the agreement was unconscionable and ordered it dissolved. The court did not explain upon what grounds it found the agreement unconscionable. However, if any reasonable view of the facts and law might support the judgment of the trial court, we are obliged to affirm its decision. We follow this rule even if the trial court has reached the correct result for the wrong reason. *City of Phoenix v. Geyler,* 144 Ariz. 323, 697 P.2d 1073 (1985).

■ The court had before it the agreement which referred, inter alia, to existing

wells on the property. The purpose of the agreement was to provide a domestic water supply to all the property owners. There was testimony that some of the property owners thought the concept of the water agreement originally was very good. The court also had before it a letter written by Cook's husband, as manager under the agreement, in which he stated that the well located on appellee's property was going dry and that "the second well, which has not been produced, is apparently quite marginal and not to be relied upon *even if completed.*" (Emphasis added) During this period, appellant Cook and her husband have been the only persons living on any of the parcels.

A close reading of the Well Agreement, apparently drafted by appellant Cook's husband, shows that it provided for at least two wells. Yet, by his own words, Cook's husband knew that only one well was in existence. The second well had not been completed, and even if it were completed, it was "not to be relied upon." At the time of the execution of the agreement, the Cooks knew that the existing well was insufficient to accomplish the purpose of the agreement, to provide a domestic water supply for all of the property owners. We believe there was sufficient evidence before the trial court to support its judgment to dissolve the agreement.

Both parties have requested attorney's fees on appeal. In our discretion, each party shall bear their own attorney's fees.

Affirmed.

HOWARD, P.J., and FERNANDEZ, J., concur.